UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE L. REVIS,<br><br>        Plaintiff,<br><br>    v.<br><br>STU SHERMAN, et al.,<br><br>        Defendants. | Case No. 1:18-cv-01695-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>OBJECTIONS, IF ANY, DUE WITHIN 21 DAYS<br><br>(ECF No. 13) |

      Andre Revis ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the complaint commencing this action on December 13, 2018. (ECF No. 1). Plaintiff's complaint appeared to challenge certain drug testing at the prison, and his Rules Violation Reports (RVRs) that came from that testing. The Court screened Plaintiff's complaint, found that it stated no cognizable claims, and gave Plaintiff leave to amend. (ECF No. 10). Plaintiff filed a First Amended Complaint ("FAC") on August 30, 2019 (ECF No. 13), which is before this Court for screening.

      For the reasons described below, the Court recommends that this action be dismissed, with prejudice, for Plaintiff's failure to state a claim. Plaintiff may file objections to these findings and recommendations within twenty-one days from the date of service of this order.

///

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 6), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint is thirty-three pages long. It names forty-five individuals as defendants. Plaintiff's main factual allegations are as follows.

On Wednesday, May 8, 2019, Plaintiff endured the last of a series of mandatory random drug tests, under the mandatory random urinalysis program. This program dated back to January 2015. As part of this program, correctional official/defendant A. Arreazola conducted the first capricious urinalysis testing contrary to the statutory requirements. This testing is a condition for inmate participation in certain programs and activities.

Plaintiff refers to a Rules Violation Report ("RVR") narrative regarding his first mandatory drug test. On January 6, 2015, correctional officer Arreazola ordered Plaintiff to submit urine for mandatory random urinalysis program. Plaintiff complied. He submitted to a clothed body search. No contraband was discovered. The officer placed latex gloves on his hands and instructed Plaintiff how to break the tamper device on the bottle. The officer stated in the narrative that he saw Plaintiff urinate into the bottle and lock the lid closed. He then labeled and secured the bottle. He showed Plaintiff the name and CDCR number printed on the label, and Plaintiff indicated that the information was correct. The officer stated that he maintained sole possession of the sample until he placed it into an evidence refrigerator.

Plaintiff alleges that the protocols officer Arreazola describes routinely violated regulations in order to obtain or substantiate state and federal funding.

Plaintiff states that he is "challenging the many violations corrupt policies/procedures used in order to obtain an (R.V.R.) guilty finding from/for 'urine collected.'"

On January 12, 2018, Plaintiff was summoned once again to expose himself under undue duress/humiliation of an arbitrary and capricious weekly urinalysis test to monthly urinalysis drug testing. Plaintiff seized the opportunity to serve notice surrounding the C-facility officials' systematic illicit illegalities and professional disregard for the penal code and regulations regarding collection of an inmate's specimen. Plaintiff's specimen was provided to a number of different contracted laboratory, who collected informational data on Plaintiff without authorized consent from Plaintiff. Prison authorities distributed Plaintiff's many urine specimens in order to circumvent prison officials limited capacity for field testing. "These urinalysis for laboratory testing <u>are not</u> certified by and/or trained testing laboratory personell [sic] for collection of or for urinalysis laboratory processing protocol(s) and certification as

3

official's employed by C.D.C.R. to perform/collect urinalysis…."

According to the narratives in various RVRs, it appears that, over the course of three years, Plaintiff was required to provide urine specimens in highly trafficked and unsanitary areas, with no consideration of the privacy of Plaintiff. Some inmates stood by clothed or unclothed while other inmates urinated or were standing in boxer shorts preparing to urinate. It was like an assembly line, where certain defendants disregarded urine collection protocols. This left the possibility of contamination. Defendants J. Aerrmann, B. Urban, R. Walters, S. Khamvongsa, R. Hopkins, E. Hennesay, T. Essepian, and A. Arreazola all collected urine specimens from Plaintiff under very adverse conditions resulting in a material and adverse effect on the welfare of Plaintiff due to the misleading typed narratives.

The reviewing supervisors all approved of their subordinates' methods of operation. They often substantiated the narratives in RVRs. Other defendants never once considered the inadequate collection and testing methods in obtaining their desired conclusions.

The findings were then certified by senior hearing officials. Plaintiff suffered punishment including the loss of good time, the loss of work assignments, loss of yard/exercise, confinement to quarters, loss of canteen, and loss of other privileges. There was only the mere mention of drug treatment enrollment, i.e., alcoholics/narcotics anonymous or substance abuse education.

During each RVR disciplinary hearing, Plaintiff stated that it was pain medication related and pled not guilty. Drug addiction that significantly limits a major life activity is a recognized disability under the ADA. But this qualification protects only those addicts not currently using illegal drugs or are in the process of completing supervised drug rehabilitation programs. Defendants punished and harassed Plaintiff with excessive and unfounded drug testing to secure state and federal funding.

Plaintiff also claims that officials conspired against him, as evidenced by the many adjustments instituted throughout the three-year course in which Plaintiff provided urine specimens. The RVR narratives demonstrate official bias and interference by the appeals coordinators. Appeals coordinators impeded Plaintiff's due process rights to be free of

4

systematic obstruction, deprivation, and retaliation in conjunction with denying Plaintiff's 602 appeals. Officials acted to punish Plaintiff for filing grievances. Time constraints were disregarded. The reasons given for rejecting appeals were unreasonable, such as that the issues did not derive from a single event. This resulted in an excessive loss of time credits.

Due in part to Plaintiff's numerous grievances challenging the many inaccuracies, a large number of Plaintiff's rules violation infractions were dismissed in the interests of justice. However, Plaintiff had often already served the punishment portion of the disciplinary infraction.

Plaintiff nevertheless lacks any legitimate hope of a fair and impartial degree of mediation through this penological arbitration and appeal process. The appeals coordinators collude with the correctional directors and other individuals.

Plaintiff also refers to other RVRs and grievances.

### III.     ANALYSIS OF PLAINTIFF'S CLAIMS

#### A.  Rule 8—Clear Statement of Claims

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim…." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). See also Iqbal, 556 U.S. at 677-78. In addition to the grounds for *sua sponte* dismissal set out in § 1915(e)(2)(B), the district court may also dismiss a complaint for failure to comply with Rule 8 if it fails to provide the defendant fair notice of the wrongs allegedly committed. See McHenry v. Renne, 84 F.3d 1172, 1178–80 (9th Cir. 1996) (upholding Rule 8 dismissal of complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) (citing cases upholding Rule 8 dismissals where pleadings were "verbose," "confusing, distracting, ambiguous, and unintelligible," "highly repetitious," and comprised of "incomprehensible rambling," while noting that "[o]ur district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations.") (citations and internal quotation marks omitted).

5

Here, Plaintiff lists more than twenty Rules Violations Reports subject to challenge over a three-year period. He names more than forty-five individuals as defendants. It is difficult, if not impossible, to discern what claim(s) Plaintiff is asserting against each defendant, and why. The Court attempted to set forth the applicable legal standards in its screening order and gave leave to amend in order to allow Plaintiff to more clearly set forth his claims. Despite this guidance, Plaintiff's First Amended Complaint is difficult to understand and does not satisfy Rule 8's pleading standards. Thus, it is subject to dismissal on this basis alone.

**B. Cannot Challenge Duration of Sentence Through A Section 1983 Case**

Plaintiff alleges that he lost good time credits and credit earning status. He repeatedly mentions the loss of good time credits, although it is not clear what punishment was given for which Rules Violation Reports.

If Plaintiff is not serving a life sentence, Plaintiff may not challenge the RVRs in which he lost good time credits in this civil proceeding because it would result in a change of the duration of his sentence. If a successful challenge to the RVRs would necessarily result in a shorter sentence, Plaintiff must challenge the results of his RVRs through a writ of habeas.

The Supreme Court has recognized that "[f]ederal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus, 28 U.S.C. § 2254, and a complaint under the Civil Rights Act of 1871 ... 42 U.S.C. § 1983." Muhammad v. Close, 540 U.S. 749, 750 (2004) (*per curiam*). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus; requests for relief turning on circumstances of confinement may be presented in a § 1983 action." Id. (citation omitted); Nettles v. Grounds, 830 F.3d 922, 927 (9th Cir. 2016). See also Wolff v. McDonnell, 418 U.S. 539, 554 (1974) (citing Preiser v. Rodriguez, 411 U.S. 475, 500 (1973)) ("In Preiser, state prisoners brought a § 1983 suit seeking an injunction to compel restoration of good-time credits. The [Supreme] Court held that because the state prisoners were challenging the very fact or duration of their confinement and were seeking a speedier release, their sole federal remedy was by writ of habeas corpus.").

To the extent Plaintiff is challenging RVRs that resulted in loss of good-time credits,

6

which affected the duration of his sentence, he cannot proceed in this § 1983 action.

**C. Rules Violation Reports**

a. <u>Legal Standards</u>

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. <u>Wolff</u>, 418 U.S. at 556. However, "[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake." <u>Coakley v. Murphy</u>, 884 F.2d 1218, 1220 (9th Cir.1989). A liberty interest may arise from the Constitution itself, or from an expectation or interest created by state law or prison regulations. <u>See Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005); <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995). When a state creates a liberty interest, the interest "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 483-84.

To the extent that Plaintiff is entitled to due process under the legal standards discussed above, Plaintiff retains his right to due process subject to the restrictions imposed by the nature of the penal system. <u>Wolff</u>, 418 U.S. at 556. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Id.</u> <u>Wolff</u> established five constitutionally mandated procedural requirements for disciplinary proceedings. First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense." <u>Id.</u> at 564. Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]." <u>Id.</u> Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." <u>Id.</u> (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972)). Fourth, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." <u>Id.</u> at

7

566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or … to have adequate substitute aid … from the staff or from a[n] … inmate designated by the staff." Id. at 570.

### b. Analysis

To the extent Plaintiff is allowed to challenge the RVRs in this civil proceeding, Plaintiff has failed to state a claim. Plaintiff has not sufficiently alleged that the prison failed to give him the process he was due under these legal standards. Nor has he sufficiently alleged that he suffered an atypical and significant hardship in relation to the ordinary incidents of prison life before he received such process. While he challenges his RVRs generally, he does not allege that he was deprived of any procedural due process in his disciplinary proceedings.

**D. Drug Testing**

### a. Legal Standards

The Fourth Amendment prohibits only unreasonable searches. Bell v. Wolfish, 441 U.S. 520, 558 (1979); Byrd v. Maricopa County Sheriff's Office, 629 F.3d 1135, 1140 (9th Cir. 2011); Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). The reasonableness of the search is determined by the context, which "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. Factors that must be evaluated are "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Id.; Bull v. City and Cnty. of San Francisco, 595 F.3d 964, 972 (9th Cir. 2010) (*en banc*).

The Ninth Circuit Court of Appeals has stated that "[t]here is no question that use of narcotics is a problem that plagues virtually every penal and detention center in the country," and that drug testing is a legitimate means to "attempt to curb the use and flow of drugs among persons in a volatile environment peculiarly susceptible to drugs." Thompson v. Souza, 111 F.3d 694, 702-703 (9th Cir. 1997) (citations and internal quotation marks omitted). The Thompson Court held that the factors in Bell to determine the reasonableness of a search

should be applied in the context of drug tests:

> [W]e analyze the reasonableness of the instant drug test to determine if the drug test was reasonably related to legitimate penological interests. Reasonableness in the context of prison administration requires "[b]alancing the significant and legitimate security interests of the institution against the privacy interests of the inmates." *Id.* at 560, 99 S.Ct. at 1885. At least two circuits have adopted the *Bell* balancing test in response to prison inmates' challenges to random urinalysis and have concluded that, upon a determination that the procedures for selecting the inmates to be tested are "truly random," such testing is not unreasonable. *See, e.g., Spence v. Farrier,* 807 F.2d 753, 755 (8th Cir.1986); *Forbes v. Trigg,* 976 F.2d 308, 315 (7th Cir.1992); *see also Storms v. Coughlin,* 600 F.Supp. 1214, 1223 (S.D.N.Y.1984) (procedure for selecting inmates for testing not "truly random" and thus unreasonable where prison official selected cards representing inmates off a bulletin board). The requirement of random tests stems from a concern that correctional officials could harass particular inmates by subjecting them to repeated drug tests. *See Forbes,* 976 F.2d at 315.

Thompson, 111 F.3d at 702.

Furthermore, in the context of prison searches, "[t]he Eighth Amendment protects prisoners from searches conducted only for 'calculated harassment.'" Vigliotto v. Terry, 873 F.2d 1201, 1203 (9th Cir. 1989) (quoting Hudson v. Palmer, 468 U.S. 517, 530 (1984)). "'It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause….'" Vigliotto, 873 F.2d at 1203 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).

      b. <u>Analysis</u>

To begin, the Court notes that it is not clear if Plaintiff is even bringing a Fourth Amendment claim. To the extent that he is, the Court finds that Plaintiff fails to state a claim based on his allegations regarding the drug testing.

Plaintiff alleges that the drug tests did not serve a legitimate penological purpose, and were done only to humiliate, penalize, punish, and discipline arbitrarily. While drug testing could be used to humiliate, harass, and punish, Plaintiff provides no allegations suggesting that this is what occurred here.

As to the searches themselves, Plaintiff has not sufficiently alleged that they were conducted in a humiliating or harassing manner. For example, Plaintiff merely alleges that he

was forced to urinate in bathroom/shower areas, where other inmates were present (some urinating, some preparing to urinate). Plaintiff does not allege that the searches were conducted in a manner in which inmates could see his genitals while he urinated, or that other inmates did see his genitals while he urinated. Plaintiff also does not allege that female correctional officers conducted the tests. Plaintiff failed to allege sufficient facts from which the Court can draw an inference that the drug tests were conducted in an unconstitutional manner, and thus has failed to state a claim.

### E. Processing of Appeals

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

As Plaintiff does not have a liberty interest in the processing of his appeals, the Court finds that Plaintiff fails to state a claim based on his allegations that his appeals were not appropriately processed. To the extent Defendants failed to process his appeal, that may allow Plaintiff to proceed in court without fully exhausting administrative remedies. But poor processing of appeals is not an independent constitutional violation.

### F. Retaliation

A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408

F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Watson v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff has failed to state a retaliation claim. While Plaintiff has sufficiently alleged that adverse actions were taken against him, there are no facts alleged suggesting that any defendant took an adverse action against Plaintiff because he engaged in protected conduct.

## IV. CONCLUSION AND RECOMMENDATIONS

The Court finds that Plaintiff's complaint fails to state a cognizable claim. As Plaintiff was previously provided with relevant legal standards and granted leave to amend, and as Plaintiff again failed to state any cognizable claims, it appears that further leave to amend would be futile.

Accordingly, the Court HEREBY RECOMMENDS that:

1. This action be DISMISSED, with prejudice, based on Plaintiff's failure to state a claim upon which relief may be granted; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 15, 2020**            /s/ Erica P. Grosjean
                                       UNITED STATES MAGISTRATE JUDGE

11